**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Curtis Dewayne Decker, | No. CV-21-00761-PHX-DWL (MTM) |
| Petitioner, | **REPORT & RECOMMENDATION AND ORDER** |
| v. | |
| David Shinn, et al., | |
| Respondents. | |

TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE:

Petitioner Curtis Dewayne Decker has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1).[1]

## I.    SUMMARY OF CONCLUSION

Petitioner was convicted of first-degree murder and first-degree burglary. Petitioner filed a habeas petition asserting five grounds for relief. Because the petition is untimely by over three years and not entitled to equitable tolling, the Court recommends it be denied and dismissed with prejudice.

## II.    BACKGROUND

### A.    Conviction & Sentencing.

The Arizona Court of Appeals summarized the facts of the case as follows:[2]

---

[1]    Petitioner has also filed a "Motion for Order to Produce State Court's Record and Transcripts" (doc. 11) which the Court will address and deny herein.

[2]    The Court presumes the Arizona Court of Appeals' summary of the facts is correct. 28 U.S.C. § 2254(e)(1); *Purkett v. Elem*, 514 U.S. 765, 769 (1995).

The victim lived with his girlfriend and her mother, Judy, in Judy's apartment. Decker was friends with Judy and visited her regularly. One day, Decker and the victim fought in Judy's apartment. After pushing each other and wrestling, the victim drew a knife and cut Decker's face. Decker told the victim to step outside to "finish this," but the victim stayed inside and Decker rode away on a bicycle.

About 20 minutes later, Decker returned with two or three people in a car. They all got out of the car, and Decker walked to Judy's front door. The apartment manager—looking on from her own apartment—saw Judy standing beside the open door as Decker stood in the doorway, drew a gun, and quickly fired three shots. Decker then laughed, put the gun in his pocket, and left in the car. The victim, who was inside Judy's apartment, died from two close-range gunshot wounds to the chest. Judy later told the victim's daughter that she had seen Decker "in the doorway" and that Decker had shot the victim.

After the apartment manager identified Decker from a photographic lineup, Decker was arrested and charged with first-degree murder and first-degree burglary. After an initial mistrial due to a hung jury, Decker was convicted as charged, with the jury unanimously finding both premeditated and felony murder. Decker was sentenced to concurrent terms of life in prison with the possibility of release after 25 years for the murder conviction and 10.5 years for the burglary conviction, and he timely appealed.

*State v. Decker*, 239 Ariz. 29, 30 (App. 2016).[3]

## B. Direct Appeal.

In his opening brief on appeal, Petitioner claimed the trial court's denial of his *Batson*[4] challenges violated his constitutional rights to due process, equal protection, and a fair trial and that substantial evidence did not support his conviction for first-degree burglary. (Doc. 8-1, Ex. G, at 25–51). In a supplemental brief, Petitioner claimed the trial court erred by overruling his objection to the State's statement in closing argument that a bullet entering a residence constitutes "entry" for purposes of establishing first-degree

---

[3]    *See* Doc. 8-1, Ex. A, at 3–5 (indictment, 7/12/2012); Doc. 8-1, Ex. B, at 7–9 (mistrial declared, 5/30/2013); Doc. 8-1, Ex. C, at 11–12 (guilty verdicts, 2/25/2014); Doc. 8-1, Ex. D, at 14–17 (sentencing order, 3/28/2014); Doc. 14-1, Ex. O, at 13–33 (sentencing transcript, 3/28/2014); Doc. 8-1, Ex. F, at 21–23 (notice of appeal, 4/4/2014).

[4]    *Batson v. Kentucky*, 476 U.S. 79 (1986).

burglary. (Doc. 8-1, Ex. J, at 82–95). On January 7, 2016, the Arizona Court of Appeals affirmed the convictions and sentences. (Doc. 8-1, Ex. L, at 120–28). On August 30, 2016, the Arizona Supreme Court denied review. (Doc. 8-2, Ex. O, at 2). On September 29, 2016, the Arizona Court of Appeals issued its mandate. (Doc. 8-2, Ex. P, at 4).

**C.    Post-Conviction Relief ("PCR").**

**1.    Initial Proceeding.**

On April 21, 2017, Petitioner filed a delayed notice of PCR claiming ineffective assistance of counsel. (Doc. 8-2, Ex. Q, at 15–18). He asserted he was "without fault" for the untimeliness because his "comprehension is limited as determined by [an] attached letter." (*Id.* at 17). On June 1, 2017, the PCR court dismissed the proceeding as "untimely by more than five months" and noted Petitioner had not provided the letter referenced in the notice. (Doc. 8-2, Ex. R, at 20–22). On July 5, 2017, Petitioner filed a letter from George DeLong, a psychologist who examined Petitioner on August 22, 2012 and found him competent for purposes of plea bargaining, and a letter from an individual named Cory Brookins, who stated Petitioner "will not be able to read and comprehend court materials without specialized assistance." (Doc. 8-2, Ex. S, at 24–26).[5] Nearly two years later, on June 5, 2019, Petitioner filed a "Motion for Status." (Doc. 8-2, Ex. T, at 29–31). On June 15, 2019, the PCR court issued a minute entry stating it had reviewed the motion and letters filed on July 5, 2017 and advising Petitioner that his PCR proceeding had been dismissed on June 1, 2017. (Doc. 8-2, Ex. U, at 33).

**2.    Successive Proceedings.**

On July 31, 2019, Petitioner filed a second notice of PCR and a PCR petition. (Doc. 8-2, Ex. V, at 35–76). Petitioner asserted the previous notice had been prepared by "the

---

[5]      In his petition and reply, Petitioner included a copy of Dr. DeLong's letter containing an additional page absent in the 2-page copy in Respondents' response cited here. (*Compare* Doc. 1, Ex. I, at 95–97; Doc. 14, Ex. G, at 38–40 *with* Doc. 9-2, Ex. S, at 25–26). There are questions concerning the completeness of the 3-page copy given that the second and third pages are both labeled page "2" and the third page ends in the middle of a sentence and has a different font than the other two pages. (*See* Doc. 1, Ex. I, at 95–97; Doc. 14, Ex. G, at 38–40).

unit paralegal" and that he is "mentally disable[d] with an IQ below 60" which the sentencing judge "recognized."[6] (*Id.* at 35, 37). Petitioner claimed the trial court improperly instructed the jury by: "omit[ting] the essential element of intent" from the instruction on first-degree burglary, "provid[ing] an instruction that allowed the jury to find [him] guilty of premeditated first-degree murder for intending to cause serious physical injury or any injury," and providing an instruction that impermissibly "shifted the burden of proof to [him]." (*Id.* at 43). Petitioner further claimed his trial and appellate counsel were ineffective and that these claims were not precluded. (*Id.* at 37, 43). On August 19, 2019, the PCR court dismissed the petition. (Doc. 8-2, Ex. W, at 78–79). On October 1, 2020, the Arizona Court of Appeals granted review but denied relief. (Doc. 8-2, Ex. Y, at 152–57). On March 4, 2021, the Arizona Supreme Court denied review. (Doc. 8-2, Ex. Z, at 159).

On October 5, 2021, Petitioner filed a third PCR notice and petition. (Doc. 14-1, Ex. Q, at 38–61). Petitioner states this petition is "still pending." (Doc. 14 at 9).

## III.   PETITION FOR A WRIT OF HABEAS CORPUS

On April 26, 2021,[7] Petitioner filed the present petition asserting five grounds for relief as summarized by the Court:

> In Ground One, Petitioner alleges that the trial court's denial of Petitioner's *Batson* challenges to the State's peremptory strikes of two prospective minority jurors violated Petitioner's constitutional rights to due process, equal protection, and a fair trial.
>
> In Ground Two, Petitioner alleges that his burglary conviction is not supported by substantial evidence.
>
> In Ground Three, Petitioner alleges that the trial court denied Petitioner's right to a fair trial and due process by incorrectly stating the law for first degree burglary and omitting the essential element of intent from the jury

---

[6]     At sentencing, the judge considered Petitioner's "limited mental function" as a mitigating factor. (Doc. 14-1, Ex. O, at 30–31).

[7]     Petitioner states he placed his petition in the prison mailing system on April 26, 2021. (Doc. 1 at 12). A document filed by a *pro se* prisoner litigant is deemed "filed" on "the date the document is delivered to a prison official for mailing." *Stewart v. Cate*, 757 F.3d 929, 933 n.3 (9th Cir. 2014). The Clerk docketed the petition on April 29, 2021.

instruction, and by providing an instruction that allowed the jury to find Petitioner guilty of first-degree murder for "intending to cause serious physical injury or any injury."

In Ground Four, Petitioner alleges that his rights to a fair trial, due process, and equal protection were violated when the burden of proof instruction "incorrectly convey[ed] the concept of reasonable doubt to the jury, shifted the burden of proof to Petitioner, and impermissibly ease[d] the prosecution's burden of proof."

In Ground Five, Petitioner alleges that his trial and appellate counsel provided ineffective assistance.

(Doc. 4 at 1–2). Respondents argue the petition should be denied because it is untimely and certain claims are procedurally defaulted. (Doc. 8). Petitioner replied. (Doc. 14).

## IV.     TIMELINESS

### A.     Statute of Limitations.

"The federal Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes a 1-year statute of limitations for filing a federal habeas corpus petition." *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). In general, the limitations period runs from the date "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). If a petitioner does not seek review by the United States Supreme Court, the judgment becomes "final" upon the expiration of time for seeking such review. *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012); *Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007) ("The period of 'direct review' includes the 90–day period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." (cleaned up)); *see* Sup. Ct. R. 13.

### B.     Statutory Tolling.

"'[A] properly filed application for State post-conviction or other collateral review' tolls AEDPA's statute of limitations for the pendency of the state court proceedings." *Curiel v. Miller*, 830 F.3d 864, 868 (9th Cir. 2016) (quoting 28 U.S.C. § 2244(d)(2)).

"Properly" filed means the application was filed in compliance with "applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). "[T]ime limits, no matter their form, are 'filing' conditions." *Pace*, 544 U.S. at 417. Thus, an untimely application for state post-conviction relief does not toll the statute. *Id.* at 414 ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (citation omitted)); *Curiel*, 830 F.3d at 868 ("A habeas petition that is untimely under state law is not 'properly filed.'" (quoting *Pace*, 544 U.S. at 413)).

### C. Equitable Tolling.

A petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 648 (2010) (quoting *Pace*, 544 U.S. at 418). "The diligence required . . . is 'reasonable diligence,' not 'maximum feasible diligence.'" *Id.* at 653. However, "'the threshold necessary to trigger equitable tolling . . . is very high, lest the exceptions swallow the rule.'" *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (citations omitted). Thus, "equitable tolling is available . . . only when extraordinary circumstances beyond a prisoner's control make it *impossible* to file a petition on time and the extraordinary circumstances were the *cause* of the prisoner's untimeliness." *Ford v. Gonzalez*, 683 F.3d 1230, 1237 (9th Cir. 2012) (cleaned up; emphasis in *Ford*).

## V. DISCUSSION

### A. Petitioner's petition is untimely.

Direct review concluded on November 28, 2016 when the time for seeking review by the United States Supreme Court expired—90 days after the Arizona Supreme Court denied review on August 30, 2016 (doc. 8-2, Ex. O, at 2). *See Gonzalez*, 565 U.S. at 150; *Summers*, 481 F.3d at 717. Petitioner's petition was therefore due on November 28, 2017. 28 U.S.C. § 2244(d)(1)(A). Because Petitioner did not file his petition until April 26, 2021, it is untimely by 1,245 days (roughly three and a half years).

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.     Petitioner is not entitled to statutory tolling.**

Petitioner is not entitled to tolling under 28 U.S.C. § 2244(d)(2) because at no point did he have a "properly" filed PCR petition in state court. Each of his PCR proceedings were dismissed as untimely. (*See* Doc. 8-2, Ex. R, at 20–22; Doc. 8-2, Ex. W, at 78–79; Doc. 8-2, Ex. Y, at 152–57; Doc. 8-2, Ex. Z, at 159). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (citation omitted); *see Curiel*, 830 F.3d at 868.

**C.     Petitioner is not entitled to equitable tolling.**

1.     Petitioner's Claims.

Petitioner claims his untimely petition is not barred because his "mental disability" (alleged illiteracy and "IQ of 60") "prevented him from fil[ing] any document in court." (Doc. 1 at 12). In support, Petitioner cites the letter from Dr. DeLong (doc. 14 at 38–40),[8] documents from pre-trial competency proceedings (doc. 14 at 41–50; doc. 14-1 at 1–11), and the transcript from his sentencing (doc. 14-1 at 13–33). (Doc. 14 at 8). Each is discussed in turn below.

In his August 22, 2012 letter to Petitioner's attorney, Dr. DeLong summarized his findings and conclusions regarding Petitioner's competency based on his examination of Petitioner that same day. (Doc. 14, Ex. B, at 38–40). Based on results from tests administered during the examination, Dr. DeLong opined that Petitioner "[was] illiterate and likely function[ed] well below the norm in terms of general intelligence and adaptive behavior." (*Id.* at 39). As such, Dr. DeLong stated Petitioner would "not be able to read and comprehend court materials without specialized assistance" and "that someone will have to read the material to him and also assist him with explanation to insure [*sic*] comprehension." (*Id.*). Nonetheless, Dr. DeLong found Petitioner had "sufficient understanding to cooperate with counsel and make informed decisions with regard to his case" and "a rational understanding of the waiver of rights associated with a plea bargain." (*Id.*). He concluded Petitioner did not have "any impediment to competence other than that

---

[8]     *See* Section II(C)(1), *supra.*

imposed by illiteracy and limited intellect/possible cognitive disorder." (*Id.*).

On August 29, 2013, defense counsel moved for a mental health evaluation of Petitioner pursuant to Ariz. R. Crim. P. 11.[9] (Doc. 14, Ex. H, at 42–44). The trial court granted the motion and appointed Drs. Lawrence Allen and Jason Frizzell to conduct the evaluation. (Doc. 14, Ex. I, at 46–47; Doc. 14, Ex. J, at 49–50). Petitioner and the State stipulated to the use of their reports, which were ultimately sealed, to determine Petitioner's competency. (Doc. 14-1, Ex. M, at 9; Doc. 14-1, Ex. N, at 11). These reports are not in the record before the Court.[10]

At sentencing on March 28, 2014, defense counsel argued that Petitioner should be given a 25 to life sentence rather than a natural life sentence, in part, because of his "very limited intellectual functioning," citing his placement in special education classes as a child and low scores on basic learning tests.[11] (Doc. 14-1, Ex. O, at 27–28). However, counsel noted, "admittedly, [Petitioner] gave less than a full effort in some testing procedures." (*Id.* at 28). The sentencing judge expressly considered Petitioner's "limited mental function" as a mitigating factor and, "based on the totality of the circumstances," concluded a life, rather than natural life, sentence was appropriate. (*Id.* at 30–31).

### 2. Legal Standard.

Without more, "[l]ow literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition." *Baker v. Cal. Dep't. of Corr.*, 484 F. App'x 130, 131 (9th Cir. 2012); *see Dunnings v. Shinn*, No. CV-19-03286-PHX-DGC

---

[9]     "At any time after an information is filed or an indictment is returned in superior court or a misdemeanor complaint is filed, the court may, on motion or on its own, order a defendant's examination to determine whether the defendant is competent to stand trial." Ariz. R. Crim. P. 11.2(a)(1).

[10]     These reports and other documents from Petitioner's competency proceeding are the subject of his pending discovery motion, which will be addressed later in the Report.

[11]     Counsel also argued the "conduct of [the victim] on the day of the murder" was an additional mitigating circumstance, noting the victim had cut Petitioner's face with a knife during the fight that ultimately led to his murder and that a toxicology report showed the victim had methamphetamine in his system. (Doc. 14-1, Ex. O, at 29).

(DMF), 2020 WL 4220076, at *2 (D. Ariz. July 23, 2020); *Trevizo v. Borders*, No. 1:16–cv–01845–DAD–SKO HC, 2018 WL 3017547, at *12 (E.D. Cal. June 14, 2018) ("[A] lack of legal assistance or lack of adequate legal assistance is not grounds for equitable tolling, because there is no right to legal assistance in post-conviction relief."). To obtain equitable tolling on the basis of a mental impairment or other cognitive limitation, a petitioner must satisfy a two-prong test:

> (1) *First*, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>
>> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>>
>> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) *Second*, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (citations omitted). "The 'totality of the circumstances' inquiry in the second prong considers whether the petitioner's impairment was a but-for cause of any delay." *Id.* at 1100; *see also Milam v. Harrington*, 953 F.3d 1128, 1132 (9th Cir. 2020) ("Equitable tolling for a mental impairment does not require a literal impossibility, but instead only a showing that the mental impairment was a but-for cause of any delay." (cleaned up)). "With respect to the necessary diligence, the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Bills*, 628 F.3d at 1101. "[E]ven in cases of debilitating impairment the petitioner must still demonstrate diligence." *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 (9th Cir. 2014); *see Stancle v. Clay*, 692 F.3d 948, 959 (9th Cir. 2012) ("[T]he petitioner must show diligence in seeking assistance with what he could not do alone."); *Bills*, 628 F.3d at 1100 ("The petitioner . . . always remains accountable for diligence in pursuing his

or her rights."); *see also Dunnings*, 2020 WL 4220076, at *4 ("[E]ven if [petitioner] satisfied the first prong of the *Bills* test, he is unable to show the second prong, that he diligently pursued his claims to the extent that he could understand them." (cleaned up)).

3.   Analysis & Conclusion.

Petitioner is not entitled to equitable tolling on the basis of his alleged cognitive limitations and illiteracy because, even if these limitations inhibited his ability to understand the need to timely file his petition or to personally prepare it and effectuate its filing, he has not shown the diligence necessary to obtain equitable tolling on that basis— *i.e.*, that his limitations were the but-for cause of the delay. *See Bills*, 628 F.3d at 1100.

Petitioner claims his "mental disability prevented him from fil[ing] *any* document in court." (Doc. 1 at 12 (emphasis added)). However, Petitioner, proceeding *pro se*, filed at least three PCR petitions in Maricopa County Superior Court, a petition for review in the Arizona Court of Appeals, and a petition for review in the Arizona Supreme Court. (*See* Doc. 8-2, Ex. Q, at 15–18 ; Doc. 8-2, Ex. V, at 35–76; Doc. 8-2, Ex. X, at 81–150; Doc. 8-2, Ex. Z, at 159; Doc. 14-1, Ex. Q, at 38–61). Moreover, Petitioner, proceeding *pro se* in this Court, filed the present petition, a reply to Respondents' answer to the petition, a motion for an extension of time to file his reply, and the pending motion for discovery. (Docs. 1, 9, 11, 14). Petitioner clarifies in his reply that he had assistance in preparing these filings, asserting his first PCR notice was prepared by his appellate counsel and a prison paralegal and "all other court filings" were prepared by "another inmate." (Doc. 14 at 2, 4, 9). While the record shows Petitioner submitted multiple requests for assistance with his preparing first PCR notice, absent from the record are any similar requests for assistance with preparing a federal habeas petition. (*See* Doc. 14, Exs. C–E, at 18–36; *see also* Doc. 14, Ex. B, at 17 (letter from appellate counsel containing partially-filled PCR notice and filing instructions)). The only action Petitioner alleges he took with respect to a federal habeas petition is that he "attempted to contact" his appellate counsel "to discuss how he can present his claim in federal court." (Doc. 14 at 8). On July 8, 2017, Petitioner submitted a request to make a legal call to counsel. (Doc. 14-1, Ex. P, at 35). However, Petitioner did

not state the purpose for the call in the request; he merely stated, "I need to make a legal [*sic*] to Kerri Chamberlin." (*Id.*). In response, counsel sent Petitioner "a box of legal material," which he states he received in August 2017. (Doc. 14 at 8). Critically, Petitioner does not state what further action, if any, he took between receiving these materials in August 2017 and November 28, 2017—the day his petition was due—much less why he delayed even *attempting* to pursue his federal claims until July 2017 when his convictions became final in November 2016. The absence of any explanation for Petitioner's inaction and delay during the limitations period, coupled with the absence of any unambiguous requests for assistance with preparing a federal habeas petition (as he had done for his first PCR notice), precludes a finding that Petitioner exercised the necessary diligence in pursuing his federal rights. On this record, equitable tolling is unwarranted. *See Yow Ming Yeh*, 751 F.3d at 1078 ("[E]ven in cases of debilitating impairment the petitioner must still demonstrate diligence."); *Stancle*, 692 F.3d at 959 ("[T]he petitioner must show diligence in seeking assistance with what he could not do alone."); *Bills*, 628 F.3d at 1101 ("[I]f prison officials or even other prisoners were readily available to assist [the petitioner] in filing his habeas petition but [the petitioner] refused to accept their assistance, a court could conclude [the petitioner] may not have been diligent in pursuing his claims such that he is entitled to equitable tolling."); *Canez v. Ryan*, 25 F. Supp. 3d 1250, 1265 (D. Ariz. 2014) ("Petitioner has not offered any set of facts in this case to establish a connection between his mental impairment and his ability to file a timely federal habeas petition."); *Dunnings*, 2020 WL 4220076, at *4 (denying equitable tolling where "the record [did] not reflect any efforts made by [the petitioner] to timely file a habeas petition, let alone efforts constituting reasonable diligence"); *Tsosie v. Ryan*, No. CV-16-08003-PCT-PGR (JZB), 2016 WL 6089830, at *4 (D. Ariz. Aug. 19, 2016) (denying equitable tolling where petitioner "demonstrated no diligence in seeking or locating assistance to assist with the filing of the Petition"), *adopted by* 2016 WL 6070961 (D. Ariz. Oct. 17, 2016); *Brown v. Ryan*, No. CV-14-08229-PCT-DJH, 2015 WL 3990513, at *7, 9 (D. Ariz. June 30, 2015) (denying equitable tolling where petitioner "[did] not explain what efforts he made to pursue his

claims" and "how his alleged mental health impairment prevented him from filing his petition").[12]

### D. Petitioner does not show he is actually innocent and his double jeopardy claims are waived.

Petitioner claims in his reply that he is actually innocent of the first-degree murder charge based on "the single fact that [he] was acquitted of first-degree premeditated murder and felony murder" in the first trial, asserting—without citation to any legal authority—that the jury's failure to reach a verdict constituted "an implied acquittal." (Doc. 14 at 1, 9). Petitioner further claims that retrying him after the first trial resulted in a mistrial due to the jury's failure to reach a verdict violated the Double Jeopardy Clause. (*Id.*).

Under the "fundamental miscarriage of justice exception," a petitioner may obtain merits review of an otherwise procedurally barred constitutional claim by showing "actual innocence." *Herrera v. Collins*, 506 U.S. 390, 404, 416 (1993); *see Poland v. Stewart*, 117 F.3d 1094, 1106 (9th Cir. 1997) ("[The fundamental miscarriage of justice] exception is limited to those who are actually innocent."). "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998). "[T]he petitioner must 'go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'" *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) (citations omitted). To establish a "credible" claim of actual innocence, a petitioner must present "new reliable evidence" and "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995); *see Jones*, 763 F.3d at 1247 ("In order to pass through the *Schlup* actual innocence gateway, a petitioner must demonstrate that in light of new evidence, it is more likely than not that no reasonable juror would have found the petitioner guilty beyond

---

[12]    The Court notes defense counsel's statement at sentencing—that Petitioner "gave less than a full effort in some testing procedures" (doc. 14-1, Ex. O, at 28)—could provide an additional or alternative basis for denying equitable tolling. *See, e.g.*, *Brown*, 2015 WL 3990513, at *7 (denying equitable tolling where a psychologist noted petitioner "made an 'unsophisticated attempt to appear mentally ill,' and his 'profile appeared to be characteristic of individuals who are feigning a mental disorder . . .'").

1    a reasonable doubt." (cleaned up)).

2         Petitioner has not shown he is actually innocent. Petitioner's claim fails at the outset

3    for his failure to proffer any new evidence in support of it. *See Schlup*, 513 U.S. at 324;

4    *Thomas v. Goldsmith*, 979 F.2d 746, 750 (9th Cir. 1992) ("[B]are allegations,

5    unsupplemented by evidence, do not tend to establish . . . actual innocence sufficiently for

6    the court to ignore [a procedural bar to merits review]."); *Pratt v. Filson*, 705 F. App'x

7    523, 525 (9th Cir. 2017) ("[Petitioner] has produced no new evidence whatsoever. He

8    merely argues that he is not guilty because the facts of the crime . . . do not support a finding

9    that he [committed the crime]. This is a legal argument, not evidence. The actual innocence

10   gateway is therefore closed to [petitioner] on this conviction."); *Colvin v. United States*,

11   181 F. Supp. 2d 1050, 1054 (C.D. Cal. 2001) ("[T]he claim of actual innocence must be

12   based solely on reliable evidence not presented at trial."). Moreover, Petitioner's argument

13   in support of his claim is without any basis in law or fact. Contrary to Petitioner's assertion,

14   he was not "acquitted" of anything during the first trial. The jury simply failed to reach a

15   verdict one way or the other, which resulted in a mistrial. (*See* Doc. 14, Ex. A, at 13–15;

16   Doc. 8-1, Ex. B, at 7–9). That does not mean he was acquitted—implicitly or otherwise.

17   His claim of actual innocence, which is premised solely on the "single fact" of the jury's

18   failure to reach a verdict in the first trial, fails. Accordingly, Petitioner fails to show review

19   of his claims is necessary to prevent a fundamental miscarriage of justice.

20        In addition to the reasons above, Petitioner is not entitled to review of his double

21   jeopardy claims because he did not present them in his petition (*see* doc. 1), asserting them

22   only in his reply. "The district court need not consider arguments raised for the first time

23   in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007); *see Delgadillo v.

24   Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008) ("Arguments raised for the first time in

25   petitioner's reply brief are deemed waived."); *Cacoperdo v. Demosthenes*, 37 F.3d 504,

26   507 (9th Cir. 1994) ("A Traverse is not the proper pleading to raise additional grounds for

27   relief."); *see also* Rule 2(c)(1), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254

28   (stating that a habeas petition must "specify *all* the grounds for relief available to the

petitioner" (emphasis added)).

**E.    Petitioner's Motion for Order to Produce State Court's Record and Transcripts is denied.**

On August 27, 2021, Petitioner moved the Court to order Respondents to produce documents from his Rule 11 competency proceeding. (Doc. 11). Specifically, Petitioner seeks: (1) "court record and transcripts of Hearing/Motion/Rule 11 exam" dated September 10, 2013; (2) "court record and transcripts of mental exam expert appointed" dated September 25, 2013; (3) "stipulation for determination of competency" dated December 17, 2013; (4) the "original sealed" reports of Drs. Allen and Frizzell; and (5) "court record and transcripts of mental exam/Defendant competency" dated December 17, 2013. (*Id.* at 2). Respondents argued the motion should be denied because Petitioner "has not argued that he does not have access to his own mental health and trial records," "has not shown that an order from this Court is necessary to compel production of his own records," and "does not specify what in these documents would support excusing his untimeliness— especially given that these proceedings led to him being found competent and able to assist his counsel in his defense." (Doc. 13).

As explained above, the extent of Petitioner's mental impairment is immaterial to the Court's equitable tolling analysis due to his lack of diligence. The Court, therefore, finds no good cause to expand the record to include additional evidence regarding Plaintiff's mental impairment because such evidence, even if sufficiently probative of a qualifying mental impairment, would be inconsequential to the Court's findings with regards to equitable tolling. *See* Rule 6(a), Rules Governing Section 2254 Cases, 28 U.S.C. § 2254 ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery."); *Orthel v. Yates*, 795 F.3d 935, 939–40 (9th Cir. 2015) ("Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of

1   mental incompetence." (citation omitted)); *see also Bracy v. Gramley*, 520 U.S. 899, 904

2   ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to

3   discovery as a matter of ordinary course."). Accordingly, Petitioner's motion for discovery

4   is denied.

5   **VI.    CONCLUSION**

6           An evidentiary hearing is not necessary as the record is sufficiently developed for

7   resolution of the petition, including whether equitable tolling is warranted on the basis of

8   any mental impairment. *See Clark v. Chappell*, 936 F.3d 944, 967 (9th Cir. 2019); *Orthel*,

9   795 F.3d at 939–40. As discussed in this Report, Petitioner's habeas petition is untimely

10  and not entitled to equitable tolling. Accordingly, the Court will recommend that the

11  petition be denied and dismissed with prejudice.

12  **VII.   CERTIFICATE OF APPEALABILITY**

13          "The district court must issue or deny a certificate of appealability when it enters a

14  final order adverse to the applicant." Rule 11(a), Rules Governing Section 2254 Cases, 28

15  U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a

16  substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), "by

17  demonstrating that jurists of reason could disagree with the district court's resolution of his

18  constitutional claims or that jurists could conclude the issues presented are adequate to

19  deserve encouragement to proceed further," *Miller–El v. Cockrell*, 537 U.S. 322, 327

20  (2003). Petitioner has not made the requisite showing here. Accordingly, the Court will

21  recommend that a certificate of appealability be denied.

22          **IT IS ORDERED** that Petitioner's Motion for Order to Produce State Court's

23  Record and Transcripts (doc. 11) is **denied**.

24          **IT IS RECOMMENDED** that the Petition for a Writ of Habeas Corpus (doc. 1) be

25  **denied** and **dismissed with prejudice**.

26          **IT IS FURTHER RECOMMENDED** that a certificate of appealability be **denied**.

27          This recommendation is not an order that is immediately appealable to the Ninth

28  Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should

not be filed until entry of the District Court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 11th day of March, 2022.


Honorable Michael T. Morrissey
United States Magistrate Judge